NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HARRY PARIKH, | : | Hon. Dennis M. Cavanaugh |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 09-1652(DMC)(JAD) |
| UNITED PARCEL SERVICE, INC., EDWARD FAGAN, JULIE FIELDS, and ANNETTE JOHNSON, | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendants' Motion for Summary Judgment (ECF No. 71), and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 84). Pursuant to Rule 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **granted**, and Plaintiff's Motion is **denied**.

I.  BACKGROUND

This matter involves a dispute over the termination of an employee. Plaintiff is Harry Parikh ("Plaintiff"), a former employee of United Parcel Service, Inc. ("UPS"). Plaintiff is representing himself in this action. Defendants are Plaintiff's former managers, Annette Johnson ("Johnson"), Julie Fields ("Fields"), and Ed Fagan ("Fagan") (collectively, the "Individual Defendants"), and UPS (collectively, "Defendants"). UPS terminated Plaintiff's employment in November 2008. Defendants contend that

Plaintiff falsified his timecards on multiple occasions in violations of UPS's Honesty in Employment Policy. (Defs.' Br. 1; ECF No. 71-1). Plaintiff, however, argues that the termination was discriminatory, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act (the "ADEA"). (Complaint ¶¶ 3-5; ECF No. 1).

Plaintiff began his employment at UPS in 1999, under a temporary assignment at UPS's Information Services group in Mawah, New Jersey. (Pl.'s Dep. 36:24-25; 39:6-7; 152:7-9). UPS hired Plaintiff as a full time junior accountant on October 11, 1999. (Pl.'s Dep. 43:25; 44:1-2). From that date until September 2006, Plaintiff worked in UPS's general ledger department. (Pl.'s Dep. 53:4-10). In May of 2005, and again in June of 2006, Plaintiff went on Absence of Leave for health related problems. (Pl.'s Br. 1; ECF No. 84-1). In October 2006, UPS transferred Plaintiff to its telecommunications department, where Plaintiff remained until November 3, 2008, the date of his termination. (Pl.'s Dep. 46:13-48:10; 49:5-7; 53:4-25; 54:1).

Prior to his transfer to the telecommunications department in October 2006, Plaintiff had a meeting with Fagan, in which Fagan informed Plaintiff of the transfer. (Pl.'s Br. 6). During that meeting, Plaintiff claims that Fagan commented that he was "getting too old." (Pl.'s Dep. 97:2-16). Plaintiff also claims that Fagan told him to "go back where you came from" and tore a copy of a certificate of his degree. (Pl.'s Dep. 97:6-98:19). Plaintiff did not report this incident until October 2008, during an investigation of Plaintiff's alleged violations of UPS's Honesty in Employment Policy. (Pl.'s Dep. 146:4-9; 232:3-6). Plaintiff has not alleged that Defendants made any other age related comments after this incident. (Pl.'s Dep. 153:7-13).

Plaintiff also bases his suit on an encounter with Annette Johnson in October 2008. (Pl.'s Dep. 232:11-233:3). Plaintiff claims that Johnson entered his cubicle when he had his eyes closed, was

holding his hands and was chanting to himself, and asked "Harry, are you praying." (Pl.s' Dep. 84:8-25; 85:8-12; 88:8-24; 90:6-91:6). Plaintiff claims that he asked why Johnson asked this question, and in response, Johnson asked if Plaintiff was Hindu or Muslim. (Pl.'s Dep. 90:25-91:15). Plaintiff asked Johnson why she wanted to know, and Johnson left without responding. (Pl.'s Dep. 91:1-9). Plaintiff has not alleged that Johnson made any other discriminatory or offensive statements after this incident. (Pl.'s Dep. 93:18-20; 94:24-95:2; 93:21-24).

UPS has an "Honesty in Employment Policy" (the "Policy"), which stresses the importance of integrity in the workplace, and notes that dishonesty "will result in immediate dismissal and possible criminal prosecution." (Pl.'s Dep. 189: 5-12; 191:9-23; Ex. M to cert. of Brigette N. Eagan; ECF No. 71-18). Plaintiff received and signed an acknowledgment of the Policy on October 6, 2008. (Pl.'s Dep. 189:5-12; 191:9-23).

In 2008, Defendants became concerned that certain employees were falsifying timecards. (Fagan Dep. 129:9-21). Fagan asked two managers, Joe Butkus and Julie Fields, to observe and note the actual time when employees arrived at work. (Fagan Dep. 129:9-21). Defendants claim that during this investigation, Plaintiff was observed on October 20 and October 22 of 2008 entering work approximately forty minutes later than he had reported. (Ex. A to Field's Cert.; ECF No. 71-29). Defendants also stated that Plaintiff was consulted with regarding the alleged October 20, 2008 incident prior to October 22, 2008, and warned Plaintiff that falsifying timecards could result in dismissal. (Ex. A to Field's Cert.) Plaintiff has denied both the allegations of falsifying timecards, and that any meeting occurred. Following the alleged incidents, UPS's human resources department conducted an investigation of Plaintiff's timecard reporting, including checking electronically generated reports from when Plaintiff used his identification badge to swipe into the building. (Hartley Cert.; ECF No. 71-24). Defendants

eventually concluded that Plaintiff falsified his timecard both on October 20 and 22, 2008, that Plaintiff was engaged in prior instances of timecard issues, and that the human resources department's investigation further established Plaintiff's misconduct. (Fagan Dep. 78:23-79:12). Defendants claim that Plaintiff was terminated based on these conclusions. Plaintiff, however, contends that the true reason for his termination was related to the alleged discriminatory acts of Defendants.

Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the New Jersey Division of Civil Rights ("DCR") on December 4, 2008, alleging violations of the ADEA, Title VII, and the Americans with Disabilities Act. (Ex. J to Eagan Cert.; ECF No. 71-15). Plaintiff filed his Complaint with this Court on March 8, 2009, alleging statutory claims under the ADEA and Title VII, and a common law claim for wrongful termination. Defendants filed the instant Motion on March 25, 2011. Defendants seek Summary Judgment on two grounds: first, because Plaintiff's age discrimination claim is time barred, and second, because the remaining claims are without merit. (Def.'s Br. 16, 18). Plaintiff filed his Opposition and Cross-Motion on June 15, 2011. Defendants filed their Reply on July 18, 2011 (ECF No. 86). The matter is now before this Court.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. See id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations

or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

A. ADEA Filing Deadlines

An individual must exhaust the EEOC's procedural remedies by filing a charge within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). An exception to this requirement exists where an individual has "initially instituted" an action with a state or local agency, in which case the charge must be filed within 300 days. Id. Failure to exhaust statutory remedies precludes an individual from succeeding on claims of discrimination. See Mitchell v. W. Union, No. 06-949, 2007 U.S. Dist. LEXIS 92621, at *12 n.6 (D.N.J. Dec. 11, 2007). "These preliminary steps are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977).

Here, Plaintiff filed his charges with the EEOC and DCR on December 4, 2008. The alleged age discrimination incident occurred in October, 2006, over two years before Plaintiff filed his charges. It

is well settled that the EEOC filing deadlines act as statutes of limitations, and that if aggrieved parties do not comply with these filing deadlines, they are barred from commencing civil actions in federal courts. See, e.g., Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2002) ("[Plaintiff's] attempt to obtain relief under federal law from [defendant's] alleged employment discrimination on the basis of race and age may proceed only if he filed his administrative charge of discrimination within 300 days of the unlawful employment actions he challenges.") This deadline period begins to run when the discriminatory act complained of occurs, not when the consequences of the act become most painful. Del. State College v. Ricks, 449 U.S. 250, 258 (1980).

Plaintiff contends, however, that the "continuing violation" theory rescues his case from the EEOC filing deadlines. (Pl.'s Br. 15; ECF No. 84-1). Plaintiff argues that his termination in 2008, and replacement with a "substantially young employee," extended his filing deadline. Under the continuing violation theory, a plaintiff may pursue claims for discriminatory conduct that accrued prior to the filing deadline "if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination by the defendant." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). "To establish a continuing violation, a plaintiff must show that: (1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is 'more than the occurrence of isolated or sporadic acts of intentional discrimination' and is instead a continuing pattern of discrimination." Harel v. Rutgers, 5 F. Supp. 2d 246, 261 (D.N.J. 1996) (citing Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." AMTRAK v. Morgan, 536 U.S. 101, 112 (2002). In order to constitute a continuing violation, the acts "must be continuous on an almost daily basis." Speth v. Goode, No. 95-0264, 2011 U.S. Dist. LEXIS 5792 at *24-25 (D.N.J. Jan. 20, 2011) (JBS).

The continuing violation doctrine does not save Plaintiff's ADEA claim. First, the "substantially younger" employee that Plaintiff claims replaced him was over forty years old and thus within the same protected class as Plaintiff, and was hired as a full time employee four months before Plaintiff's termination. (Ex. UU to Parikh Cert.; ECF No. 84-58). It is therefore difficult to understand how hiring of this employee could constitute a discriminatory act. Even if it did, however, that would only be the second alleged discriminatory act over a two year period. These two acts would constitute only discrete acts over a lengthy time span, not a continuing violation. Accordingly, Plaintiff's ADEA claim is time barred.

B. Plaintiff's Remaining Claims

    1. Title VII and the ADEA

In addition to being time barred, Plaintiff's ADEA claim, along with his remaining claims, fails for lack of merit. In order to establish a prima facie case under either Title VII or the ADEA, Plaintiff must show that: (i) he belonged to a protected class; (ii) he was qualified for his employment and performing up to his employer's expectations; (iii) he was laid off or passed over; and (iv) other workers not belonging to the protected class were retained. McDonnell Douglas v. Green, 411 U.S. 792 (1973); Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). Once Plaintiff establishes a prima facie case, the burden of production (but not the burden of persuasion) shifts to the Defendants to articulate a legitimate nondiscriminatory reason for the adverse employment decision. See Fuentes, 32 F.3d at 764. If Defendants adduce such evidence, Plaintiff can survive summary judgment only by pointing to pretextual evidence in the record "from which a fact finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating and determinative cause of the employer's action." Keller v. Orix Credit Alliance, Inc.,

130 F.3d 1101, 1108 (3d Cir.1997) (en banc) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994)).

To survive summary judgment under the first prong of the pretext test, Plaintiff must discredit Defendants' reasons, not by "simply showing that the employer's decision was wrong or mistaken . . . [but] rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Keller, 130 F.3d at 1108-09 (quoting Fuentes, 32 F.3d at 765). In order to show pretext, Plaintiff must identify evidence "allowing the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." 130 F.3d at 1111 (quoting Fuentes, 32 F.3d at 762). Such evidence must prove discrimination "based solely on [its] natural probative force[.]" Id.

Defendants have assumed, for purposes of this Motion, that Plaintiff can establish a prima facie case. (Def.'s Br. 19). Defendants' arguments, therefore, focus on their own legitimate reasons for terminating Plaintiff's employment, and Plaintiff's failure to establish that those reasons served as a mere pretext for what were actually discriminatory motivations.

Defendants have satisfied their burden for establishing legitimate reasons for terminating Plaintiff's employment. First, Defendants have established the existence of a company policy demanding high levels of integrity and honesty from UPS employees. (Ex. M to cert. of Brigette N. Eagan). Defendants have also demonstrated the existence of an investigation into time card reporting violations by Plaintiff, and that Defendants chose to terminate Plaintiff's employment based on this investigation. (Fagan Dep. 78:23-79:12). The existence of this policy, and Defendants' conclusion that Plaintiff violated it, is a legitimate reason for terminating Plaintiff's employment. See, e.g., Vasquez v. J.B. Hunt

Transp. Inc., No. 07-5615, 2008 U.S. Dist. LEXIS 98779 at *14-15 (D.N.J. Dec. 5, 2008) (MLC) (finding violation of company policy against insubordination "evidence of a nondiscriminatory reason for plaintiff's termination to rebut the presumption of discrimination that would be created by a prima facie case.")

Plaintiff has not convinced this Court that Defendants' reasoning was mere pretext. In his opposition brief, Plaintiff argues that nobody from the human resources department actually saw him falsifying his time cards, and raises a question of why at least two other employees were found to have "engaged in similarly activities of incorrect entries on the timecard," but were not terminated. (Pl.'s Br. 16-17). Plaintiff thus argues that the real reason for his termination was the Defendants' discriminatory motives. Plaintiff's argument fails for two reasons. First, whether Defendants' decision to terminate Plaintiff was "wise, correct or prudent" is beyond the scope of this Court's inquiry. See Chambers v. Heidelberg USA, Inc., No. 04-583, 2006 U.S. Dist. LEXIS 32334 at *40-41 (D.N.J. May 5, 2006) (RBK); Fuentes, 32 F.2d at 766. The focus of the inquiry, rather, is on whether the termination decision was motivated by discriminatory animus. Id. In demonstrating pretext for this animus, plaintiffs must present more than mere speculation. Connolly v. Mitsui O.S.K. Lines (Am.), Inc., No. 04-5127, 2009 U.S. Dist. LEXIS 86195 at *11 (D.N.J. Sept. 21, 2009) (JLL) ("Speculation . . . is not sufficient to demonstrate pretext.") Defendants have presented actual facts reflecting a reasoned determination to terminate Plaintiff based on violations of company policy. Plaintiff has presented little more than speculation as to why that decision was unreasonable. This is insufficient to demonstrate pretext.

Second, Plaintiff's concerns that two other employees were not fired after they engaged in similar time card reporting falsifications is of no merit. Defendants have presented evidence that these were new employees, and have averred that neither of these two employees had been trained or counseled about

time card reporting before their own incidents. (Defs.' Reply Br. 16, Ex. G to Lario Cert.; ECF No. 86-11). The Court will not second guess Defendants' legitimate business decisions, absent a stronger showing of actual animus towards Plaintiff. The alleged incidents complained of are insufficient to raise Plaintiff's claims of pretext above a speculative level. Accordingly, Plaintiff's claims for discrimination based on his age, national origin, and religion are without merit.

### 2. Wrongful Termination

Plaintiff has also alleged a cause of action for wrongful termination. (Compl. ¶ 5). This claim is based on the same set of facts and arguments as Plaintiff's discrimination claims. (Compl. ¶ 1-5). Common law claims that do not protect interests "in addition to or aside from those" protected by statutory remedies are duplicative of the statutory remedies, and thus barred. Lolagne v. Sears, No. 04-3768, 2006 U.S. Dist. LEXIS 3468 at *10-11 (D.N.J. Jan. 30, 2006) (WGB) ("The Court finds that Plaintiff's wrongful discharge claim would not protect any interest additional to his causes of action under the [Law Against Discrimination] and ADEA, which both provide an adequate remedy for a discrimination claim.") Plaintiff has provide the Court with no reason to believe that a common law wrongful termination cause of action would protect any right beyond his ADEA and Title VII claims. Accordingly, this claim is barred as duplicative of Plaintiff's statutory claims.

### 3. Claims Against the Individual Defendants

Plaintiff has also pled causes of action under Title VII and the ADEA against the Individual Defendants in their individual capacities. (Compl. ¶ 3). Neither Title VII nor the ADEA permit individual liability. See Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII"); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006) ("[T]he ADEA does not provide for

individual liability.") Accordingly, Plaintiff's claims against the Individual Defendants are barred.

4. Intentional Infliction of Emotional Distress

The parties have also litigated the question of whether Defendants are liable for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff is required to establish: (1) that the defendants acted intentionally or recklessly, both in doing the act and in producing emotional distress; (2) that the defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) that the defendants' action were the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it. Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 384 (D.N.J. 1999) (citing Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)).

Here, the second element is wholly lacking. The conduct complained of must be so outrageous as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citations omitted). "The termination of an employee . . . is the kind of event that happens every day; such an act is not even a breach of modern-day business etiquette, much less an uncivilized barbarism. Quite a bit more . . . must accompany a firing if it is to be deemed 'outrageous.'" Borecki v. Eastern Int'l Mgmt. Corp., 694 F. Supp. 47, 61-62 (D.N.J. 1988) (citing Fletcher v. Wesley Medical Center, 585 F. Supp. 1260, 1262 (D. Kan. 1984)). Aside from the firing itself, the only conduct complained of is the alleged statements that Plaintiff might be "getting to old" and "should go back where he came from," and the questioning of Plaintiff as to whether he was praying, and the follow up question of whether Plaintiff was Hindu or Muslim. These statements hardly merit consideration as discriminatory practices under Title VII and the ADEA. To suggest that this conduct is so atrocious and intolerable as to go beyond all possible bounds of decency is simply unreasonable.

Further, Plaintiff has not persuaded this Court that the emotional distress suffered was so severe that no reasonable person could be expected to endure it. Plaintiff admitted in his deposition that he does not have any physical or mental symptoms of emotional distress. (Pl.'s Dep. 248-249). Plaintiff's arguments that he could not afford to seek medical attention, and that he lost weight, suffers from Peripheral Artery Disease, and "looks like 80 years old at the age of 59" are of merit. (Pl.'s Br. 22-26). Plaintiff must actually present evidence of symptoms, such as by sworn testimony or medical records. Plaintiff has only provided unsupported statements in his Opposition Brief. Accordingly, Defendants are also entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **granted**. Plaintiff's Cross-Motion for Summary Judgment is **denied**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanagh
Dennis M. Cavanaugh, U.S.D.J.

Date:       October 31, 2011
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Joseph A. Dickson, U.S.M.J.
            File